**Affirmed and Opinion filed October 29, 2020**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00317-CR

## EX PARTE AUSTIN LOUIS ROBLES

**On Appeal from the 458th District Court
Fort Bend County, Texas
Trial Court Cause No. 20-DCR-090679**

## O P I N I O N

Appellant Austin Louis Robles applied for a writ of habeas corpus asking the court to lower his bail from $75,000 to $10,000. During the bail habeas hearing, the State orally requested the trial court to raise bail to $1,000,000. The trial court denied the habeas application by written order and orally raised bail to $100,000. On appeal, appellant contends the trial court abused its discretion by not lowering bail to $10,000 and by raising bail to $100,000. We affirm the denial of appellant's application, but the oral increase of bail is of no effect because it was not made by written order. Therefore, bail remains set at the original amount of $75,000.

**BACKGROUND**

Appellant is charged with aggravated assault with a deadly weapon. He is alleged to have shot the complainant, M.Z., on February 11, 2020—a date on which appellant was out on bond and awaiting trial for another felony (hindering apprehension). M.Z. was a minor when he was shot. The magistrate set bail at $75,000 on February 15, 2020.

On April 6, 2020, appellant applied for a writ of habeas corpus seeking a bail reduction on the basis of changed circumstances—namely, the COVID-19 pandemic, which began in Texas about a month after the magistrate set bail. Appellant contended his status as a diabetic made him particularly vulnerable to COVID-19, and the county jail could not adequately protect his health. He attached affidavits from his parents, Elizabeth and John Robles, to his habeas application. The affidavits, individually or in combination, assert appellant is prescribed metformin for diabetes; 21-year-old appellant is unemployed and has no money or assets; neither appellant nor his family can afford the bond for $75,000 bail; and appellant will live with John in Fort Bend County if released from jail. (Elizabeth lives in Ohio.) The State did not file a written response to the habeas application. Instead, it filed a motion for bail to be denied.[1]

John testified at the bail hearing that appellant was "trying to seek help for his diabetes in the jail," but he offered no information regarding appellant's needs, appellant's requests, or the jail's response. He also reasserted the substance of his affidavit. He testified appellant, who has lived with him since he was 15, gets along with all the family members who live in John's house. John committed to ensuring

---

[1] Attached to the State's motion were certified copies of pleadings charging appellant with three other offenses: (1) hindering apprehension committed in September 2019, the felony charge mentioned above for which appellant was out on bond; (2) misdemeanor theft committed in January 2020; and (3) aggravated robbery with a deadly weapon committed on February 3, 2020.

appellant appears for court and complies with all conditions of bail.

Detective Jeff Branson investigated the shooting of M.Z. His investigation led him to obtain a search warrant for appellant's home. While the warrant was being executed, appellant reportedly told Branson he went to meet M.Z. at the park to smoke marijuana, but he "made a mistake and . . . shot the kid in the face." Branson testified he believed the meeting in the park was a set-up to rob M.Z. He acknowledged allegations that M.Z. sells marijuana.

Detective Rick Waits testified about the armed robbery of a 16-year-old boy that occurred two days before M.Z. was shot. The boy had met a woman on Snapchat and made plans to hang out with her. The woman and a man picked the boy up, and the man pulled a gun once the boy was in the vehicle. The man demanded the boy give him his cell phone and his money. Then, the pair drove the boy to his home and said he could have the phone back if he went inside his home and brought out an Xbox or $200 in cash to give them. Waits' investigation led him to believe appellant committed that robbery, and the boy identified appellant as the man who robbed him.

William Pales is an administrative sergeant for the detention division of the Fort Bend County Sherriff's Office. He testified about how COVID-19 has affected the jail in which appellant is detained and the actions being taken in response to the pandemic. As of April 15, the day of the bail hearing, no person who had been tested had tested positive for the virus. It is not clear how many people had been tested. The preventative measures in place at the jail included:

- isolation periods for new inmates;

- testing for anyone exhibiting symptoms of COVID-19;

- minimization of movement of inmates;

- inmates were asked to wear masks, and staff members were wearing masks;

- handwashing; and

- cleaning the jail and other sanitation measures.

The number of medical staff at the jail had not increased. Pales testified every inmate has access to whatever medical care he or she requires.

During closing argument, after acknowledging its motion for denial of bail might be untimely, the State asked the trial court instead to increase bail to $1,000,000. The trial court orally increased bail to $100,000. The court later signed a written order denying appellant's habeas application, but the court has not signed an order raising bail.[2]

ANALYSIS

I. **The trial court did not abuse its discretion by denying appellant's habeas application to reduce bail.**

The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. We review a challenge to the excessiveness of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *See Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—

---

[2] Initially, the trial court did not sign an order denying appellant's habeas application. The court's ruling was reflected on a docket entry and in the reporter's record, but they are not sufficient to confer appellate jurisdiction. *Ex parte Fry*, No. 07-12-00156-CR, 2012 WL 1694362, at *1-2 (Tex. App.—Amarillo May 15, 2012, no pet.) (mem op.) (per curiam) (not designated for publication); *Broussard v. State*, No. 01-10-00458-CR, 2010 WL 4056861, at *1-2 (Tex. App.—Houston [1st Dist.] Oct. 14, 2010, no pet.) (mem. op.) (per curiam) (not designated for publication); *Wallace v. State*, Nos. 12-01-00353-CR, 12-01-00354-CR, 2001 WL 657396, at *1 (Tex. App.—Tyler Apr. 12, 2002, no pet.) (per curiam) (not designated for publication). We notified the parties we would dismiss the appeal for lack of jurisdiction unless any party established our jurisdiction. Soon thereafter, a signed order denying appellant's habeas application was filed in a supplemental clerk's record. We have not received a signed order increasing bail.

Houston [14th Dist.] 2016, no pet.).

The amount of bail required in any case is within the discretion of the trial court subject to the following rules:

1. The bail shall be sufficiently high to give reasonable assurance of compliance with the undertaking.

2. The power to require bail is not to be so used as an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. art. 17.15.

In addition to these rules, case law provides that courts may consider the following set of factors: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) the aggravating circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50. The trial court may also consider whether the defendant is a citizen of the United States. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 n.2 (Tex. Crim. App. [Panel Op.] 1980); *Dupuy*, 498 S.W.3d at 230.

## A.    Sufficiently high to assure appearance but not oppress

Bail needs to be sufficiently high to give reasonable assurance that the defendant will appear. When bail is set so high that a person cannot realistically pay

it, however, the trial court essentially "displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Dupuy*, 498 S.W.3d at 233 (quoting *Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

John's residence in Fort Bend County is relevant to the analysis in several ways. First, he testified appellant will live with him if released on bail. That means appellant would have a ready-made home; he would not have to find a place to live or raise funds to pay rent. Second, members of appellant's family also live in the house. His good relationships with them are ties to the community. Finally, John testified he will make sure appellant attends all court proceedings.

On the other hand, appellant's mother lives in Ohio, and it appears he lived with her for most of his life. She is involved in his life enough to write an affidavit on his behalf in this case. The trial court could reasonably consider the availability of an out-of-state safe harbor as it considered whether to decrease bail.

## B. Nature and circumstances of offense

The primary factors to be considered in assessing the reasonableness of bail are the nature of the offense and the punishment that may be imposed. *Rubac*, 611 S.W.2d at 849. When the offense is serious and involves aggravating factors that may result in a lengthy prison sentence, bail must be sufficiently high to secure the defendant's presence at trial. *Ex parte Castillo-Lorente*, 420 S.W.3d 884, 888 (Tex. App.—Houston [14th Dist.] 2014, no pet.). But, a defendant is entitled to a presumption of innocence on all charges. *Ex parte Melartin*, 464 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A trial court must balance that presumption with the State's interest in assuring the defendant's appearance for trial.

Appellant is charged with a violent crime: shooting M.Z. in the face. The offense as charged—aggravated assault in which he used or exhibited a deadly weapon, namely, a firearm—is a second-degree felony. Tex. Penal Code

§ 22.02(a)(2), (b). The punishment range is two to 20 years' imprisonment and up to a $10,000 fine. Tex. Penal Code § 12.33. If an affirmative finding is made that appellant used or exhibited a firearm, he will have to serve more of his sentence before he is eligible for parole than he would without such a finding. *See* Tex. Gov't Code § 508.145(d)(2). Recent opinions from our sister courts support a finding that $75,000 is reasonable—indeed, low—for aggravated assault.[3]

## C. Ability to make bail

To demonstrate inability to make bail, a defendant generally must establish his and his family's funds have been exhausted. *Dupuy*, 498 S.W.3d at 234. If he does not make that showing, a defendant must usually show he made an unsuccessful effort to furnish bail before bail can be determined to be excessive. *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The accused's ability to make bail is only one factor to be considered in determining the appropriate amount of bail. *Dupuy*, 498 S.W.3d at 234. "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bound should be." *Id.* (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)).

John and Elizabeth both asserted in their affidavits that they cannot afford the bond for $75,000 bail. Elizabeth further stated appellant has no money or bank accounts, has not been able to work since he was incarcerated, and cannot afford any

---

[3] *E.g.*, *Ex parte Jackson*, No. 03-18-00494-CR, 2019 WL 1782037 (Tex. App.—Austin Apr. 24, 2019, no pet.) (mem. op.) (not designated for publication) (upholding **$100,000** bail for aggravated assault of a public servant); *Ex parte Jones*, Nos. 10-18-00387-CR, 10-18-00388-CR, 10-18-00389-CR, 2019 WL 1388746 (Tex. App.—Waco Mar. 27, 2019, no pet.) (mem. op.) (not designated for publication) (upholding **$250,000** bail for aggravated assault of a public servant); *Ex parte Hanson*, No. 03-18-00795-CR, 2019 WL 1065897 (Tex. App.—Austin Mar. 7, 2019, no pet.) (mem. op.) (not designated for publication) (upholding **$200,000** bail for aggravated assault with a deadly weapon).

bond. John's testimony echoed Elizabeth's assertions regarding appellant's financial resources. John stated in his affidavit that he had been laid off due to the COVID-19 pandemic, but he testified at the bail hearing that he is a "QC auditor for Dycon Goodlance" and owns a small pressure-washing business. The State did not cross-examine John about his testimony regarding his and appellant's financial conditions.

On appeal, the State contends appellant failed to meet his burden of proof regarding inability to make bail because he did not establish that his family's financial resources had been exhausted. We agree, and we also note appellant offered no evidence of an unsuccessful effort to furnish bail.

### D.     Future safety of victims and community

Appellant is suspected of committing two violent crimes in the days preceding the shooting of M.Z.: (1) aggravated robbery with a deadly weapon on February 3 ("the Airpods Robbery"), and (2) the aggravated robbery with a deadly weapon of a 16-year-old boy on February 11 discussed above ("the Xbox Robbery"). In each crime, appellant and/or an accomplice allegedly lured the complainant to a meeting, robbed that person at gunpoint, and forced the person to travel to another location to give appellant money or other property.

In the Airpods Robbery, the complainant, Sam, placed a pair of Apple Airpods for sale through Snapchat. Appellant allegedly expressed interest in buying the Airpods and made arrangements to meet Sam. When Sam and a friend arrived at the agreed location, appellant allegedly pulled a gun and demanded Sam give him his property and car keys. Sam begged appellant not to take his car, so appellant forced Sam to drive to an ATM so he could withdraw cash to give to appellant for the privilege of keeping his car. Before appellant and Sam left to go to the ATM, appellant arranged for an accomplice to guard Sam's friend at gunpoint. The Xbox Robbery, described above, involved a similar *modus operandi*: a pretext for the

8

complainant to meet appellant, robbery at gunpoint, and transportation at gunpoint to another location to obtain more property or money. Further, Detective Branson, who investigated the crime underlying this case, testified he believed the meeting in the park was a set-up for appellant to rob M.Z.

Appellant is entitled to the presumption of innocence in all three cases. Even affording appellant that presumption, the trial court could reasonably decide the allegations regarding his acts in the Airpods Robbery and the Snapchat Robbery evinced sufficient danger to the community to deny appellant's request to lower bail.

### E.    *Rubac* factors

*Appellant's work record.* Apart from occasional part-time work, appellant is unemployed. There is no suggestion he attends school or has a physical condition that prevents him from working full-time.

*Appellant's family and community ties.* As discussed above, appellant has family ties to the Harris County and Fort Bend County areas, as well as to Ohio.

*Length of appellant's residency.* Appellant has lived in this area for six years, since he was 15 years old.

*Appellant's prior criminal record.* In addition to being suspected of committing the Airpods Robbery and the Xbox Robbery, appellant has been charged with two crimes in Harris County: hindering apprehension, a third-degree felony; and misdemeanor theft.

*Other bonds.* Appellant was out on bond for the hindering-apprehension charge at the time he allegedly committed the theft, Airpods Robbery, Xbox Robbery, and the aggravated assault in this case.

*Aggravating circumstances in the charged offense.* Appellant is accused of shooting a minor. One detective believed appellant lured M.Z. to the park to rob him.

9

**F.     A new *Rubac* factor?**

Appellant urges us to add a factor to the *Rubac* analysis: Does the defendant's presence in jail pose a health and safety risk to himself and the community?

As an intermediate court of appeals, we are bound to follow the decisions of the Texas Court of Criminal Appeals. When, as here, that court has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation. *Cervantes-Guerra v. State*, 532 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Mayer v. State*, 494 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The Court of Criminal Appeals decided *Ex parte Rubac* in 1981, nearly 40 years ago. Its factorial test has been applied in over 300 intermediate court opinions and countless bail decisions by trial courts. We are not permitted to disturb the high court's deliberate and unequivocal interpretation of the law. The Beaumont Court of Appeals considered and rejected a claim that bail should be reduced due to the defendant's health condition:

> With respect to Appellant's argument that his "condition is making it impractical to maintain his health while incarcerated[,]" Appellant fails to cite to any legal authority indicating that his health treatment justifies a reduction in his bail. . . . [A]ccording to the record before us, a health services administrator testified at the hearing that persons in custody at the jail are able to receive medical care, including dialysis. We cannot say that the trial court abused its discretion or that any health concern of Corona's outweighs the article 17.15 and *Rubac* factors.

*Ex parte Corona*, Nos. 09-18-00166-CR through 09-18-00172-CR, 2018 WL 4609037, at *4 (Tex. App.—Beaumont Sept. 26, 2018, no pet.) (mem. op.) (not designated for publication).

We need not create a new factor, as the trial court allowed evidence about the appellant's health and about the conditions in the jail. He could have considered this evidence under other factors. As in *Ex parte Corona*, appellant presented virtually

no evidence regarding the risk to his health and safety he faces by remaining in jail. He demonstrated he has Type 2 diabetes, and he alluded to reports in the media that people with underlying health conditions, including diabetes, may be more vulnerable to contracting COVID-19 or may experience more negative outcomes if they contract COVID-19. He did not present expert testimony, nor did he demonstrate whether or how the jail's COVID-19 procedures are insufficient to protect him. On the other hand, Pales testified that every inmate has access to medical care. The trial court could have reasonably decided the scant evidence regarding the actual risk to appellant did not compel a reduction in bail.

We conclude appellant has not shown the trial court abused its discretion in denying his habeas application to reduce bail.

## II.     The oral ruling increasing bail is of no effect.

Both parties argue about the merits of the increase of bail to $100,000, but neither party addresses whether an oral order increasing bail is valid. A court of appeals must review its jurisdiction regardless of whether it is raised by the parties. *See Bell v. State*, 515 S.W.3d 900, 901 (Tex. Crim. App. 2017) (per curiam). We have not located a case like this one, where a bail reduction was denied by written order but a bail increase was granted by oral ruling.

A pretrial bail increase makes it harder for a defendant to get out of jail. It amounts to a continued deprivation of the defendant's liberty before a finding of guilt. Texas law requires a written order in other situations in which a person is deprived of his liberty before a finding of guilt. For example, an order denying bail must be in writing; an oral denial of bail does not suffice. *Westbrook v. State*, 753 S.W.2d 158 (Tex. Crim. App. 1988). If a judge (of the trial court, court of appeals, or Court of Criminal Appeals) decides that bail taken in a case is insufficient in amount, or if the sureties are not good for the amount, or that the bond is for any

reason defective or insufficient, the judge shall issue a warrant of arrest and require sufficient bond and security from the defendant. *See* Tex. Code Crim. Proc. art. 16.16. A warrant of arrest must be in writing. *Id.* art. 15.01. *See also id.* art. 17.09 (authorizing judge or magistrate to order re-arrest if bond, not bail, suffers certain defects). Before a person may be jailed for civil or criminal contempt, due process requires the court to sign a written judgment or order of contempt and a written commitment order. *See Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex. 1980); *Ex parte Supercinski*, 561 S.W.2d 482, 483 (Tex. Crim. App. 1977).

When a defendant has already taken bail, the Code of Criminal Procedure requires a written order rearresting him and setting a new bail amount to increase bail. Tex. Code Crim. Proc. art. 16.16. We see no reason the same protection should not be afforded to a defendant for whom bail has been set but not taken when the court decides to increase bail. Appellant is such a defendant. The trial court's oral increase of bail is invalid.

## CONCLUSION

We affirm the trial court's order denying appellant's habeas application to decrease bail. The trial court's oral increase of bail is of no effect. Bail remains set at $75,000.

/s/    Tracy Christopher
        Justice

Panel consists of Justices Christopher, Jewell, and Zimmerer.

Publish – Tex. R. App. P. 47.2(b).