**EX PARTE Christopher Michael DUPUY**

**NO. 14–15–00677–CR, NO. 14–15–00678–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed June 14, 2016

Rehearing Overruled August 4, 2016

Marcus J. Fleming, League City, TX, Matthew Fox Curl, Galveston, TX, for Appellant.

Rebecca Klaren, Galveston, TX, for State.

Panel consists of Justices Christopher, McCally, and Busby.

## OPINION

J. Brett Busby, Justice

Appellant was charged in two cases with third-degree felony online impersonation. *See* Tex. Penal Code Ann. § 33.07(a) (West Supp.2015). The magistrate originally set bail in each case at $300,000. Appellant

filed motions and pretrial applications for writ of habeas corpus requesting a reduction in bail to $10,000 in each case. After conducting an evidentiary hearing, the trial court reduced appellant's bail to $200,000 in each case. Appellant appealed. Because appellant has not established that the trial court abused its discretion in declining to reduce his bail further, we affirm the trial court's orders.

## BACKGROUND

### A. Complaints and investigation

On December 17, 2014, complainant A.E. reported to the Harris County Sheriff's Office that she had been receiving numerous calls and text messages from unknown telephone numbers. She told Deputy J. Lewis the calls began around 10:20 pm on December 16. Within an hour, she received seven calls and 26 texts. A.E. said she finally answered her phone and, through the discussion with the caller, determined the calls and texts resulted from an advertisement in the escort section of an adult website.

The ad displayed multiple photographs of A.E., provided her phone number, and said she charged $70 for a half hour. A law enforcement officer later said the ad "gave the clear impression that the poster was offering sexual services in exchange for money." A.E. told Deputy Lewis she did not post the advertisement and did not give anyone permission to post the advertisement or to use her persona for such purpose. She said she believed the advertisement was created by appellant.

On January 25, 2015, Deputy Scott Hardcastle of the Harris County Sheriff's Office interviewed A.E. She explained she had known appellant for approximately 20 years and they had dated about six years previously, before she married someone else. She recently employed appellant as her lawyer in divorce proceedings, which

were finalized in late November 2014. During his representation of her, appellant told A.E. he wanted to be in a relationship with her. A.E. declined his advances. She told Deputy Hardcastle that her saying no angered appellant. He reportedly began monitoring her personal Facebook page and made comments to her about other men with whom she communicated on Facebook. A.E. also said appellant copied photos from her Facebook page and sent them to her with derogatory remarks about them. A.E. described appellant's behavior and advances toward her as aggressive. She said she communicated with appellant only to the extent necessary to finalize her divorce. After that, she said, she ceased all contact with him and ignored all his communications.

Deputy Hardcastle learned the ad was created by someone with the user name Don Tequila. Don Tequila's account was created on December 16, 2014.

The same user had posted another advertisement for escort services, this one in the name of the second complainant in this case, C.N. That ad displayed three photos of C.N., two of her face and one of her breasts only. Deputy Hardcastle interviewed C.N., who confirmed she did not post the ad and did not give anyone permission to post the ad or use her persona for that purpose. C.N. said she and appellant had dated in the past. While they were dating, she sent him the photo of her breasts displayed in the ad. The relationship ended in August 2014. She said appellant had been harassing her since that time. C.N. said she believed the ad was created by appellant. At that time, Deputy Hardcastle had not told C.N. that appellant was a suspect in the case regarding A.E.

The person who created the Don Tequila account provided a physical address on

East Parkwood. That address is the business address of Greg Hughes, a lawyer who represented C.N. in her divorce.

Over the next four months, Deputy Hardcastle investigated the creator of the two advertisements. Eventually he determined the ads were created from an IP address that resolved to appellant's apartment.

## B. Execution of search warrant

On June 25, 2015, Deputy Hardcastle and other law enforcement officers executed a search warrant for appellant's apartment. The officers repeatedly knocked and announced themselves as police. Deputy Hardcastle said he was not sure how long they knocked and announced themselves, but it was "quite some time" and "longer than normal."

Appellant eventually acknowledged the officers' presence and asked them what they wanted. They repeatedly told him they had a search warrant. Appellant was uncooperative and would not open the door, so Deputy Hardcastle forcibly kicked open the door. Appellant was described as hesitant but cooperative once the officers were in the apartment.

When he first entered the apartment, Deputy Hardcastle could see only appellant's right side. Appellant did not appear to have anything in his right hand. The deputy could not see appellant's left side, so he instructed him to raise his hands so they were both visible. When he raised his hands, appellant dropped a bullet from his right hand onto the countertop to his right. Deputy Hardcastle directed appellant to step out of the kitchen and asked him where his weapon was. Appellant said it was in the kitchen. The deputy stepped into the area of appellant's left side and saw a 9-millimeter handgun equipped with a laser sight within appellant's reach.

In addition to the 9-millimeter handgun on the countertop, the officers found or seized several other pieces of evidence from appellant's apartment. The officers retrieved appellant's current passport, a laptop, several cell phones, and a GPS tracking device. They also found a laptop-style bag in the bathroom containing many items, including:

- appellant's driver's license;
- a checkbook;
- an LG cell phone;
- a 9-millimeter semiautomatic handgun with a laser sight and a silencer;
- four heavy-grade plastic restraints;
- a 950,000-volt stun gun;
- a KA–BAR military-style large knife;
- campfire starters;
- a multipurpose lighter;
- two handgun magazines;
- duct tape;
- electrical tape;
- a knit cap;
- black gloves;
- a hoodie; and
- two boxes of ammunition.

Appellant was arrested six days later. At the time of his arrest, appellant was on deferred adjudication community supervision for abuse of official capacity, a class A misdemeanor to which he pleaded guilty on September 19, 2013.

## C. Bail hearing

The trial court held a hearing on appellant's pretrial applications for writ of habeas corpus to reduce his bail.[1] Appellant

---

1. Through his court-appointed counsel, M. Fox Curl, appellant filed an application for writ of habeas corpus seeking bail reduction on July 16, 2015. On July 21, attorney Kristie Walsdorf filed another application for writ of habeas corpus on appellant's behalf. Appel-

did not testify, but his mother, Janice Dupuy–Green, did.

Dupuy–Green said appellant had lived in the Houston and Galveston area his entire life except during college at Southern Methodist University. Appellant has two children, but Dupuy–Green did not know where they live; she believed their mother, appellant's ex-wife, moved them. She said appellant has never been charged with a violent crime nor charged with a felony. If appellant were released, he would live with her in Houston. She did not believe appellant was a flight risk. When he was charged with abuse of official capacity, Dupuy–Green said, appellant attended every court-ordered appearance and did not attempt to flee the jurisdiction. She said he did not attempt to leave the jurisdiction in this case, either, in the six days between the execution of the search warrant and his arrest.

According to Dupuy–Green, appellant does not own a home. Sometime after he was arrested, his apartment had to be vacated and the keys returned to the landlord. He owns a Volvo that carries a lien. She did not know the value of the car. She did not know whether appellant had any bank accounts, annuities, investment accounts, gold, silver, jewelry, or other significant assets. She said he had been "struggling" financially since his last court appearance in 2013. She believed he was indigent at that time and had not had "time to rebuild." In her opinion, appellant was still indigent.

Dupuy–Green testified she spoke with two bonding agencies regarding appellant's

bail. They reportedly told her the cost of a bond would be between five to ten percent of the amount of bail, depending on her credit and the conditions of the bond. She said she could make a bond if bail were set at $20,000 in each case.[2] For an amount greater than that, she said, she would have to seek other assistance. She did not say from whom she would or could seek assistance or if she had asked for assistance at that point. Appellant did not offer any other evidence.

The State presented three witnesses: Deputy Hardcastle; Texas Ranger Joe Haralson, who participated in the investigation and the execution of the search warrant; and Detective Garrett Groce, a digital forensic analyst with the Galveston Police Department.

Deputy Hardcastle testified about executing the search warrant. He also described photos of the items seized during the execution. The photos were admitted into evidence without objection. Additional testimony from Deputy Hardcastle is summarized above.

Ranger Haralson testified about his investigation of allegations (not charged in these cases) that appellant was harassing James Hernandez and David Dowdy. Hernandez was part of the legal team who represented appellant's ex-wife in her divorce from appellant, and Dowdy was the attorney ad litem for appellant's children in the divorce proceedings.

On January 15, 2015, Hernandez reported he discovered a GPS tracking device placed on his car without his permission.

---

lant filed a pro se "supplemental motion regarding bail" on July 24, in which he asked the court to release him on his own recognizance or to reduce bail. The record does not reflect which application(s) the trial court considered.

2. Appellant's first application requested the trial court to reduce bail to "$20,000 for both cases." The second application did not specify the desired bail amount. Appellant's pro se application said bail should be reduced to "an appropriate amount ($2,500–$10,000) per case."

The GPS device was the same make and model as the one seized from appellant's apartment during execution of the search warrant. A photo of the GPS device from Hernandez's car was admitted into evidence without objection.

Dowdy told law enforcement officers he received harassing text messages from an anonymous source. A transcript of those messages and Dowdy's responses was admitted into evidence without objection. The transcript reads:

**December 19, 2014**

*Anonymous: Good evening. Enjoying a quiet night at home?*

**December 24, 2014**

*Anonymous: Enjoying the afternoon?*

Dowdy: I'm sorry. I lost my contacts when I switched phones. Who is this?

*Anonymous: I'm sorry. Who is this?*

Dowdy: This is David. You texted me.

*Anonymous: Looking forward to seeing you soon, David.*

Dowdy: I don't know who this is, but please don't text me anymore. Thank you.

*Anonymous: What do you want for Christmas, David?*

**December 25, 2014**

*Anonymous: Merry Christmas, David. Found a gift for you. Will you be home today?*

**January 12, 2015**

*Anonymous: What are you doing?*

*Anonymous: Shall we play a game?*

**January 27, 2015**

*Anonymous: Good evening.*

*Anonymous: We would advise you to respond quickly.*

Detective Groce analyzed the LG cell phone and a laptop seized from appellant's apartment during execution of the search

warrant. He testified the anonymous messages were sent from that phone. He also testified about certain Internet searches found on the laptop. A report of those searches was admitted into evidence without objection. The searches include:

- "best sniper pistols";
- "best assassin pistols";
- "how to use a garrote";
- "garrote wire"; and
- "french double garrote wire."

Detective Groce explained that a garrote is a wire with handles at both ends, typically used for strangling a person.

Following closing arguments, the trial court said:

Having heard all the evidence, there certainly is a concern regarding safety of the community on these issues. As for an appropriate bond and bond conditions, I will need to give that a little bit of thought because while the bond may be a little high, I don't think it's significantly too high. And I will evaluate an appropriate bond and some additional bond conditions for [appellant]; but I do need to take that under advisement and determine an appropriate amount.

Later that day, the trial court signed an order setting bail in each case at $200,000. Appellant timely appealed the trial court's rulings on his pretrial habeas applications.

### ANALYSIS

**I. Appellant is not entitled to hybrid representation.**

■ Before turning to appellant's arguments, we must address appellant's multiple briefs. He filed a pro se brief on October 19, 2015. On October 30, Marcus Fleming, appellant's court-appointed counsel,[3] moved for an extension of time to file a brief, writing:

---

**3.** Appellant was represented in the trial court

by court-appointed lawyer M. Fox Curl. On

On a side note, unbeknownst to counsel, on October 19, 2015, Appellant filed his own pro se hand-written brief in this matter for cause number 14–15–00677–CR only. Counsel requests that the Court disregard the pro se filing, as Appellant is represented by counsel.

Fleming filed appellant's brief on November 19.

On January 20, 2016, appellant filed a pro se supplemental brief, in which he stated:

On October 30, 2015 Appellant's former court-appointed attorney filed a "Motion for Extension of Time to File Appellant's Brief." This filing was without Appellant's knowledge or consent. Within it, former counsel wrongly asserted that this Court should "disregard the pro se filing." Appellant *does not* waive or withdraw his October 19, 2015 Brief.... [Counsel's] Brief should be considered in supplement to Appellant's October 19th Brief, not merely as an amended pleading.

Appellant filed a reply brief on February 9, 2016.

Although appellant refers to Fleming as his former lawyer, the record does not contain an order relieving Fleming of his duties, nor does it contain a request for such relief, whether by a motion by appellant to proceed pro se, a motion to substitute counsel, or a motion to withdraw by Fleming. An appointed attorney must represent the defendant "until charges are dismissed, the defendant is acquitted, appeals are exhausted, or the attorney is permitted or ordered by the court to withdraw as counsel for the defendant after a finding of good cause is entered on the record." Tex.Code Crim. Proc. Ann. art.

26.04(j)(2) (West Supp.2015); *see Johnson v. State*, 352 S.W.3d 224, 228–29 (Tex. App.–Houston [14th Dist.] 2011, pet. ref'd). Therefore, Fleming remains appellant's appellate counsel.

■ Appellant asks the court to consider his pro se filings and his lawyer's filings. The court's consideration of filings by a party who is represented by counsel is known as hybrid representation. Appellant is not entitled to hybrid representation. *Laney v. State*, 76 S.W.3d 524, 533 (Tex.App.–Houston [14th Dist.] 2002), *aff'd*, 117 S.W.3d 854 (Tex.Crim.App.2003). A criminal appellant may be represented by counsel, or under certain circumstances (discussed below) he may represent himself, but he may not do both.

■ We now turn to the question of which brief(s) to consider: appellant's pro se briefs or his lawyer's brief. Before an appellant may dismiss appointed counsel and proceed pro se, the waiver must be "knowingly and intelligently" made. *See Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Criminal defendants have a constitutional right to represent themselves at trial. *Martinez v. California*, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). By contrast, they have no federal constitutional right to represent themselves on direct appeal. *See id.* at 154–62, 120 S.Ct. 684. The Texas Constitution does not give criminal defendants the right to represent themselves on direct appeal, either. *See Hadnot v. State*, 14 S.W.3d 348, 350 (Tex.App.–Houston [14th Dist.] 2000) (order). Appellate courts have discretion to allow a defendant to proceed pro se on appeal, however, based on the best interests of the defen-

July 28, appellant filed a pro se motion in the trial court to substitute Kristie Walsdorf for Curl. The record does not contain a ruling on motion. Curl, in turn, filed a motion to withdraw as counsel on September 9, which the trial court granted. The court appointed Marcus Fleming to represent appellant. Fleming is appellant's lawyer on appeal.

dant and the government. *Martinez*, 528 U.S. at 161–62, 120 S.Ct. 684. This court follows the approach set out in *Martinez* and reviews requests to proceed pro se on a case-by-case basis considering the best interests of both the defendant and the State. *Hadnot*, 14 S.W.3d at 350.

We begin by noting that appellant has not filed a motion to proceed pro se in this court or the trial court. Even if his supplemental brief is construed as a request to proceed pro se, appellant has not demonstrated that his best interests and those of the State weigh in favor of self-representation. He has not identified any specific action or inaction by Fleming that he finds ineffective or inadequate. Fleming filed a brief on appellant's behalf, and the State responded to that brief. Fleming's brief satisfies the applicable procedural requirements: it raises a proper issue on appeal, sufficiently states the facts, and contains argument and citation to authority. *See* Tex.R.App. P. 38.2; *Hadnot*, 14 S.W.3d at 350. Therefore, we deny any implicit request by appellant to proceed pro se.

In other cases of hybrid representation, this Court has reviewed pro se filings as well as counsel's filings in the interest of justice. *Burgess v. State*, 790 S.W.2d 856, 861–62 (Tex.App.–Houston [14th Dist.] 1990), *aff'd*, 816 S.W.2d 424 (Tex.Crim. App.1991); *Sanders v. State*, 692 S.W.2d 546, 547–48 (Tex.App.–Houston [14th Dist.] 1985, no pet.); *Smith v. State*, 642 S.W.2d 253, 256–57 (Tex.App.–Houston [14th Dist.] 1982, pet. ref'd, untimely filed).

In each of these cases, we held the pro se filings did not present any error that needed to be considered in the interest of justice. *Burgess*, 790 S.W.2d at 862; *Sanders*, 692 S.W.2d at 548; *Smith*, 642 S.W.2d at 257.

Appellant contends in his pro se briefs that section 33.07 of the Texas Penal Code, the statute under which he was charged, is unconstitutional.[4] Counsel, on the other hand, alludes to that argument in his brief and notes that the statute's constitutionality is the subject of a separate habeas application in the trial court.[5]

■ A challenge to the facial constitutionality of a statute is effectively a claim that the indictment is void. Such a challenge may be raised in a pretrial application for writ of habeas corpus. *See Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex.Crim. App.2010); *Ex parte Morales*, 416 S.W.3d 546, 548 (Tex.App.–Houston [14th Dist.] 2013, pet. ref'd). However, appellant did not raise that argument in the application for writ of habeas corpus at issue in this appeal (the application requesting a reduction in bail). We may not consider grounds not raised in the trial court. *See* Tex.R.App. P. 33.1(a); *State v. Romero*, 962 S.W.2d 143, 144 (Tex.App–Houston [14th Dist.] 1997, no pet.) (although argument concerning stamp tax was mentioned in passing at habeas hearing, only argument in habeas application concerned forfeiture, so court of appeals was not permitted to consider stamp-tax argument).

---

4. Appellant also made this argument in an original proceeding for a writ of habeas corpus he filed in this court in November 2015. That proceeding was dismissed for lack of jurisdiction. *See In re Dupuy*, No. 14–15–00954–CR, 2015 WL 7456074 (Tex.App—Houston [14th Dist.] Nov. 24, 2015, no pet.) (mem.op.) (per curiam) (not designated for publication).

5. The record contains a pro se filing entitled, "Pre-Trial Application for Writ of Habeas Corpus Seeking Dismissal on Constitutional Grounds." Appellant filed that document on September 21, 2015, well after he filed his notice of appeal of the bail order on August 7, 2015. The record does not reflect a ruling on that application.

Because the constitutionality of section 33.07 is not properly before the court, we conclude there is no error described in appellant's pro se briefs that must be considered in the interest of justice. Accordingly, we consider only the brief filed by Fleming.

## II. The trial court did not abuse its discretion by declining to reduce appellant's bail further.

■■■ The right to be free from excessive bail is protected by the U.S. and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. We review a challenge to the excessiveness of bail for abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex.Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *See Ex parte Castillo–Lorente*, 420 S.W.3d 884, 887 (Tex. App.–Houston [14th Dist.] 2014, no pet.); *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.–Austin 2002, pet. ref'd). A defendant carries the burden of proof to establish that bail is excessive. *Castillo–Lorente*, 420 S.W.3d at 887.

■■■ The chief purpose of bail is to secure the presence of the defendant in court for trial. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex.Crim.App.1977). The amount of bail required in any case is within the discretion of the trial court subject to the following rules:

1. The bail shall be sufficiently high to give reasonable assurance of compliance with the undertaking.

2. The power to require bail is not to be used as an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex.Code Crim. Proc. Ann. art. 17.15 (West 2014).

■■■ In addition to the guidelines in article 17.15, courts have added seven factors to be weighed in determining the amount of bail: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50. The trial court may also consider the fact that the accused is not a United States citizen. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex.Crim. App.1980).

### A. Nature and circumstances of offenses

■■■ The primary factors to be considered in assessing the reasonableness of bail are the nature of the offenses and the punishments that may be imposed. *See Rubac*, 611 S.W.2d at 849. When the offense is serious and involves aggravating factors that may result in a lengthy prison sentence, bail must be set sufficiently high to secure the defendant's presence at trial. *Castillo–Lorente*, 420 S.W.3d at 888. A defendant is entitled to a presumption of innocence on all charges. *Ex parte Melartin*, 464 S.W.3d 789, 793 (Tex.App.–Houston [14th Dist.] 2015, no pet.). When setting bail, the trial court must strike a balance between this presumption and the State's interest in assuring appellant will appear for trial. *Id.*

Appellant is charged in each case with online impersonation. *See* Tex. Penal Code Ann. § 33.07. The indictments allege he used A.E.'s and C.N.'s names and personas without their consent to create web pages on a commercial social network site or other Internet site with the intent to harm, defraud, intimidate, or threaten them. Those allegations fall under subsection (a) of section 33.07, which is a third-degree felony. *See* Tex. Penal Code Ann. §§ 33.07(a) (describing offense), (c) (categorizing offense as third-degree felony).[6] A third-degree felony is punishable by imprisonment for two to ten years and a fine not to exceed $10,000. *Id.* § 12.34. If convicted and his sentences run consecutively, appellant faces up to twenty years' imprisonment and $20,000 in fines.

Appellant attempts to minimize the allegations, describing them as "the functional equivalent of electronically posting 'for a good time call (*insert name*).'" He characterizes the offenses for which he was indicted as "non-violent" and "virtual-based." *Cf. Ex parte Miller*, 442 S.W.3d 478, 480 (Tex.App.–Dallas 2013, no pet.) (defendant charged with making a terroristic threat contended his Facebook post that said a particular assistant district attorney "will soon perish" was a warning, not a threat).

The ads displayed A.E.'s and C.N.'s true names, photos, and phone numbers. The record shows appellant performed Internet searches of "[phone number] [A.E.'s first name]" and "[phone number] [C.N.'s first name]." The phone numbers in those searches belonged to A.E. and C.N., respectively. If appellant could confirm their phone numbers through an Internet search, so could anybody who obtained their names and phone numbers from the

ads. The trial court reasonably could find that the ads exposed the complainants to danger.

 Given the seriousness of the charged offenses and the lengthy potential sentences, the trial court reasonably could conclude there was a possibility that appellant would not appear for trial. *See Ex parte Nimnicht*, 467 S.W.3d 64, 67–68 (Tex.App.–San Antonio 2015, no pet.). Accordingly, this factor weighs in favor of a high bail amount. *See* Tex.Code Crim. Proc. Ann. art. 17.15(3).

**B. Future safety of victims and community**

 According to the sworn complaint, appellant posted ads in A.E.'s and C.N.'s name after each woman had rejected his advances. Both A.E. and C.N. said appellant had been harassing them since they declined his invitation to be in a relationship. A.E. said appellant monitored her personal Facebook page, made comments to her about other men with whom she communicated on Facebook, and sent her photos he copied from her Facebook page annotated with derogatory comments. The alleged conduct occurred while appellant was on community supervision for another offense. The trial court could reasonably have found appellant's repeated behavior toward more than one complainant and the corresponding threat to the complainants to be escalating.

The record also supports a finding that appellant acted against at least three other people because they had some connection to the complainants or his ex-wife. The person who created the Don Tequila account under which the ads were placed provided a physical address that is the

---

**6.** 6 Another type of online personation is described in subsection (b) of section 33.07. An offense under section 33.07(b) is a Class A misdemeanor. Tex. Penal Code Ann. §§ 33.07(b), (c).

business address of Greg Hughes, C.N.'s lawyer. The evidence at the bail hearing suggests appellant sent numerous anonymous text messages to David Dowdy, the attorney ad litem representing appellant's children in his divorce. Those allegations may support criminal charges. *See* Tex. Penal Code Ann. § 42.07(a)(7) ("A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person … sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another."). The evidence also suggests he placed a GPS tracking device on a car belonging to James Hernandez, who represented appellant's ex-wife in their divorce. That act may lead to a criminal charge as well. *See id.* § 16.06(b) ("A person commits an offense if the person knowingly installs an electronic or mechanical tracking device on a motor vehicle owned or leased by another person.").

Finally, when law enforcement officers executing a search warrant for appellant's apartment knocked and announced themselves several times, appellant responded by asking what they wanted but did not open the door. After quite some time, officers forced entry into appellant's apartment and found appellant with a bullet in his hand standing near the kitchen, where a 9–millimeter handgun with the clip removed rested on the counter. This evidence could support a finding that appellant was loading the gun while officers were knocking on his door. Upon searching appellant's apartment, officers found, among other things, a total of two 9–millimeter handguns (one with a silencer attached), plastic restraints, a 950,000–volt stun gun, a large knife, duct tape, electrical tape, campfire starters, a lighter, two handgun magazines, and two boxes of ammunition. Deputy Hardcastle said the sole purpose for the restraints, each of which

had two loops, is to restrain a person by their wrists or ankles. Everything except the gun on the kitchen counter was packed together in a bag, suggesting appellant intended to use the items together. Also in the bag were a knit cap, gloves, and a hoodie (in June). We recognize appellant's possession of these items was lawful, and we do not suggest simply possessing a silenced handgun is a threat to safety. But when these items are considered as a group, together with evidence of appellant's escalating harassment, the record supports a finding that appellant intended to harm a person.

On this record, the trial court reasonably could find that appellant posed a danger to the complainants and at least certain members of the community. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). Although some of the bond conditions may have mitigated this danger, there was also evidence that appellant took steps to conceal his IP address and committed the alleged crimes while on community supervision for another offense. The trial court did not abuse its discretion in concluding that this factor weighs heavily in favor of setting bail at $200,000 in each case. *See In re Hulin*, 31 S.W.3d 754, 761 (Tex. App.–Houston [1st Dist.] 2000, no pet.) (recognizing that court may give more weight to future safety factor than other factors under certain circumstances).

**C. Sufficiently high to assure appearance but not oppress**

 Bail needs to be sufficiently high to give reasonable assurance that the defendant will appear. This reasonable assurance standard "creates and limits the risks of both sides. Any grant of bail risks the defendant's flight, but bail limits that risk by reducing the money available to fund the flight, while simultaneously creating a fund to finance an effort to re-arrest

the defendant." *Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex.App.–Houston [1st Dist.] 2001, no pet.) When bail is set so high that a person cannot realistically pay it, however, the trial court essentially "displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Id.*; *accord Melartin*, 464 S.W.3d at 796.

■ Appellant's mother testified she believes he will appear for all court settings and is not a flight risk. Appellant offered little evidence, however, of continuing work or residential ties to the Galveston area that would limit the risk of flight. The evidence regarding appellant's elaborate attempts to conceal his IP address suggests an inclination to hide. In addition, appellant's mother said she does not know where appellant's children live. If appellant knew his children resided in the Houston–Galveston area, he arguably would have an incentive to remain in the jurisdiction. *See Milner v. State*, 263 S.W.3d 146, 149 (Tex.App.–Houston [1st Dist.] 2006, no pet.) ("[O]ther than being near his two children and other family members, appellant does not have a reason to remain in Brazoria County."). Because it appears appellant may not know where his children live, we cannot infer such an incentive.

Appellant offered no evidence, and we see none in the record, suggesting the trial court set his bail at $200,000 for each case in order to keep him incarcerated. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex.

App.–Austin 1987, no pet.) (trial judge stated, "I'd rather see him in jail than to see someone's life taken."). To the contrary, the trial court lowered appellant's bail from $300,000 in each case to $200,000 in each case. *See Nimnicht*, 467 S.W.3d at 70 ("There is no evidence the trial court set bail with the intent to prolong Nimnicht's incarceration, especially in light of the fact the trial court reduced the bail amount.").

The appropriate amount of bail is an individualized determination, but review of recent bail cases can be instructive. *Beard*, 92 S.W.3d at 571. Although bail amounts over $1 million are frequently held excessive, amounts between $500,000 and $750,000 have been upheld in murder cases. *See Melartin*, 464 S.W.3d at 795; *Milner*, 263 S.W.3d at 148–49. This case certainly involves offenses less serious than murder, but it also involves a much lower amount of bail for each charged offense.

Appellant's brief discusses a collection of cases involving higher-degree offenses in which the reviewing court reduced the bail set by the trial court on the ground that it was excessive. The cases are distinguishable in several ways.

First, many of them are too old to provide useful dollar-to-dollar comparisons due to the changing value of money.[7] *See Ex parte Milburn*, 8 S.W.3d 422, 427 (Tex. App.–Amarillo 1999, no pet.) (per curiam) (noting change in value of money since seminal bail opinions were issued); *Ex*

---

7. *E.g., Ludwig v. State*, 812 S.W.2d 323 (Tex. Crim.App.1991) (per curiam) (one count of capital murder, two counts of murder; $1,000,000 for all counts reduced to $50,000 for all counts); *Rubac*, 611 S.W.2d at 850; *Vasquez*, 558 S.W.2d at 477 (capital murder; $100,000 reduced to $20,000); *McDonald*, 852 S.W.2d at 736 (capital murder; $1,000,000 reduced to $75,000); *Ex parte Bell*, 784 S.W.2d 577 (Tex.App.–Houston [1st Dist.] 1990, pet. ref'd) (burglary of habitation with intent to commit sexual assault; $50,000 bail pending appeal reduced to $10,000); *Ex parte Delk*, 750 S.W.2d 816 (Tex.App.–Tyler 1988, no pet.) (capital murder; $100,000 reduced to $35,000); *Ex parte Goosby*, 685 S.W.2d 440 (Tex.App.–Houston [1st Dist.] 1985, no pet.) (per curiam) (four counts of capital murder; $250,000 for each count reduced to $100,000 for each count).

parte McDonald, 852 S.W.2d 730, 733 (Tex.App.–San Antonio 1993, no pet.) (per curiam) ("When reviewing [bail] cases it must be kept in mind that they were decided from two to twenty-two years ago."). The percentage that bail was reduced in particular cases may also be an unfair comparison if the trial court's original bail was extraordinarily high. For example, in a capital murder case, the trial court set bail at $8,000,000, and it was lowered to $500,000 on appeal—a reduction of nearly 94%. Ex parte Beard, 92 S.W.3d 566, 567 (Tex.App.–Austin 2002, pet. ref'd). Similarly, this Court reduced bail by over 98%—from $1,000,000,000 per case to $150,000 per case or a total of $450,000— for an appellant charged with the third-degree felonies of bail-jumping and tampering with evidence. Ex parte Durst, 148 S.W.3d 496, 497 (Tex.App.–Houston [14th Dist.] 2004, no pet.).

Second, many of the bail-reduction cases on which appellant relies were decided when the future safety of the victim and community—an important bail factor in this case—was either not a suggested consideration (before 1985) [8] or a required consideration (before 1993) [9] under article 17.15. See Act of June 13, 1985, 69th Leg., ch. 588, § 2, 1985 Tex. Gen. Laws 2220 (adding "5. The future safety of a victim of the alleged offense may be considered"); Act of June 2, 1993, 73rd Leg., ch. 396, § 1, Tex. Gen. Laws 1694 (adding "and the community" after "victim" and changing "may" to "shall"). In one case decided under the current version of the statute, the State conceded the defendant posed no threat to the victim or community.[10]

Third, in at least one case, the defendant voluntarily surrendered to the police.[11] In contrast, when the police knocked on the door of appellant's apartment to execute the search warrant, appellant refused to open the door, was holding a bullet, and had a 9-millimeter handgun within reach.

Appellant contends the trial court should rely on the county's bail schedule. He says the Galveston County bail schedule is not made public, but the Harris County bail schedule sets a standard bond of $5,000 to $10,000 for third-degree felonies. Bail schedules are designed as a guide to help magistrates set bail initially. Once the trial court holds a bail hearing, bail should be determined by article 17.15, not by a bail schedule. Ex parte Garcia, 100 S.W.3d 243, 246 (Tex.App.–San Antonio 2001, no pet.).

For these reasons, we conclude the trial court did not abuse its discretion in concluding that reduced bail of $200,000 per case was sufficiently high to assure appearance but was not oppressive. Tex. Code Crim. Proc. Ann. art. 17.15(1)—(2).

**D. Appellant's ability to make bail**

■■■ To demonstrate inability to make bail, a defendant generally must establish that his funds and his family's funds have been exhausted. Castillo–Lorente, 420 S.W.3d at 889. The accused's ability to make bail is only one factor to be considered in determining the appropriate amount of bail. Tex.Code Crim. Proc. Ann. art. 17.15(4); Castillo–Lorente, 420

---

8. E.g., Rubac, 611 S.W.2d at 850; Rodriguez, 595 S.W.2d at 550; Vasquez, 558 S.W.2d at 477.

9. E.g., Ludwig, 812 S.W.2d at 324; McDonald, 852 S.W.2d at 736; Bell, 784 S.W.2d at 579; Delk, 750 S.W.2d at 816; Goosby, 685 S.W.2d at 442.

10. Ex parte Bogia, 56 S.W.3d 835, 839 (Tex. App.–Houston [1st Dist.] 2001, no pet.) (theft; $360,000 reduced to $10,000).

11. McDonald, 852 S.W.2d at 735.

S.W.3d at 889. "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Ex parte Miller,* 631 S.W.2d 825, 827 (Tex. App.–Fort Worth 1982, pet. ref'd).

■ Appellant offered no documentary evidence of his assets and financial resources, and he did not testify at the hearing. The record shows that police found several weapons and electronics in appellant's possession.

Appellant's mother testified she believes appellant is indigent, and a magistrate found appellant indigent. But she admitted she did not know if appellant had any bank accounts. She said she had spoken to two bonding agencies regarding bail and thought she could afford bonds if bail were set at $20,000 per case. She said she would "have to seek other assistance" if bail were higher than that. But she did not discuss the assistance she would need, her ability to obtain assistance, or her efforts, if any, to that point to obtain assistance. Moreover, this Court has concluded that evidence of the largest bond a defendant could make does not carry a defendant's burden to establish inability to make bail. *Castillo–Lorente,* 420 S.W.3d at 889 (citing *Ex parte Ruiz,* 129 S.W.3d 751, 754 (Tex.App.–Houston [1st Dist.] 2004, no pet.)).

Because appellant offered very little evidence supporting his claimed inability to make bail, the trial court properly could have concluded that bail of $200,000 per case was reasonable under the circumstances. *See id.* (citing *Ex parte Scott,* 122 S.W.3d 866, 870 (Tex.App.–Fort Worth 2003, no pet.)).

Having considered the factors chosen by the Legislature under the abuse-of-discretion standard of review prescribed by the Court of Criminal Appeals, we hold the trial court did not abuse its discretion in declining to reduce appellant's bail below $200,000 per case.

## E. Bond conditions

■ The trial court ordered appellant to comply with a number of bond conditions. Without citing legal authority, appellant complains of certain conditions. His brief states:

[T]he trial judge has gone much farther than even George Orwell could have envisioned. In violation of the First Amendment the court has practically banned all speech and communication; has dictated which utensils are acceptable for meals; demands home confinement, a GPS diary, and weekly check-ins with her court. These odd, unprecedented, paternal conditions are not supported legally or factually. They are a gross abuse of discretion entered by the trial judge.

Appellant appears to challenge the following conditions:

- He must appear in court weekly;
- He must remain at a particular residence (presumably his mother's home) at all times other than for work, church, court, doctor or dentist appointments, medical emergencies, or to meet with his lawyer;
- He must make a daily journal of his activities outside that residence, including the date and time he left and returned, the route he took, and the purpose of the activity;
- He may not send text messages to anyone;
- He may not access or use social media; and
- He may not use or possess a knife other than a standard steak knife, which may be used only to cut food

and may not be removed from the home.

The Code of Criminal Procedure authorizes bond conditions that include, among other things, home confinement or curfew, electronic monitoring, and reasonable conditions relating to the safety of the victim and community. *See, e.g.,* Tex.Code Crim. Proc. Ann. arts. 17.40(a), 17.43(a), 17.44(a). Regular court appearances, restrictions on appellant's travel, and documentation regarding his travel are not unreasonable. *See Durst,* 148 S.W.3d at 501. Further, the trial court heard evidence that appellant harassed A.E. through her Facebook account and posted her Facebook photos on the ad he is accused of placing. The court also heard evidence that appellant sent harassing text messages to Dowdy. Plastic restraints were found in appellant's apartment in a bag that also contained firearms, ammunition, a knife, fire starters, and duct tape.

Appellant has not explained why these principles and evidence are insufficient to support the challenged conditions. To present an issue for appellate review, an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(i). Where an appellant fails to address the governing legal principles or apply them to the facts, appellant waives the issue. *Wooten v. State,* 267 S.W.3d 289, 307–08 (Tex.App.–Houston [14th Dist.] 2008, pet. ref'd); *King v. State,* 17 S.W.3d 7, 23 (Tex.App.–Houston [14th Dist.] 2000, pet. ref'd) (finding briefing waiver where appellant's brief cited a single case in support of his argument and failed to address any of the governing legal principles or apply any such principles to the facts of the case). We conclude appellant's challenge to the bond conditions is inadequately briefed and therefore waived.

CONCLUSION

Given the seriousness of the charged offenses, appellant's criminal history, the evidence that he posed an escalating threat to the complainants and other members of the community, and the need to assure appellant's appearance, we conclude the trial court did not abuse its discretion in declining to reduce appellant's bail further. We affirm the trial court's bail orders of July 30, 2015.