

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00649-CR

**EX PARTE** Jeremiah Jordan **BROWN**

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 22-03-14361-CR
Honorable Daniel J. Kindred, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: September 13, 2023

AFFIRMED

In two issues, appellant Jeremiah Jordan Brown appeals the trial court's denial of his pretrial application for writ of habeas corpus seeking a bail reduction. In addition to complaining about the trial court's denial of his bond reduction, Brown argues in his second issue that the trial court's basis for denying his bail reduction request violated his Fifth Amendment right against self-incrimination. *See* U.S. CONST. amend. V. We affirm.

## BACKGROUND

Brown, a resident of San Antonio and who was seventeen years old at the time of the alleged offense in February 2022, was arrested for murder. The trial court set his bail at $500,000. In response, Brown filed a habeas application asserting his bail was excessive, oppressive, and beyond his financial means. Brown's application requested the trial court reduce his bail to a

reasonable amount or grant a personal bond.[1] After conducting a hearing on Brown's habeas application, the trial court denied his bail reduction request.

## HABEAS HEARING

A. Brown's Witnesses

Brown called three witnesses at the bail reduction hearing. Mr. James Dorsey and Mrs. Mertha Dorsey, a married couple, live in San Antonio; and, according to Mrs. Dorsey, she is Brown's aunt. They both testified they have known Brown since he was a small child when Child Protective Services ("CPS") placed him in their home following CPS's removal from his mother. According to the Dorseys, Brown lived with them for a short time until Brown's uncle took him when Brown was a toddler. Mr. Dorsey stated he has kept in contact with Brown, but also said that when Brown moved to "the other side of town," he and Mrs. Dorsey did not see Brown often. Mr. Dorsey did not specify when this happened, but along with Mrs. Dorsey's testimony, it appeared that Brown was a young child. Mr. Dorsey also acknowledged that prior to the alleged offense, the Dorseys were not actively part of Brown's life. Nonetheless, the Dorseys testified Brown could live with them if he was released on bond.

The Dorseys testified that they would help pay Brown's bail, and Mrs. Dorsey testified specifically about her and her husband's income and assets. However, Mr. Dorsey stated he could not pay or sell his assets to pay the $50,000 or more the bond companies required for Brown's currently set bail. Rather, Mr. Dorsey indicated he could pay $5,000, maybe $10,000, towards bail, but he would have to ask for help from other people to raise the money. To Mr. Dorsey's knowledge, neither Brown nor the rest of his family have any resources to help pay his bail.

---

[1] Absent specific circumstances not argued here, a person charged with an offense involving violence—murder—may not be released on personal bond. TEX. CODE CRIM. PROC. ANN. art. 17.03(b–2), (b–3)(2)(A). Therefore, we need not address Brown's habeas application request to be released on a personal bond.

Mr. Dorsey testified that he owns a restaurant with a bar; and, if Brown was released, Brown would work for him. Additionally, the Dorseys testified they would assist Brown in acquiring his high school diploma or its equivalent. Both Mr. and Mrs. Dorsey assured they would assist Brown in complying with all the terms of his bond if released.

Brown's third witness, Victor Vinton, a former juvenile court education administrator with Bexar County and current investigator with the Hill Country Regional Public Defender's Office, testified that he would assist Brown in acquiring his high school diploma if he was released. Vinton explained the diploma could be earned through a private school that operates remotely, which would allow Brown to complete it at home without being around other students. Vinton offered to pay for Brown's tuition.

## B. Alleged Facts about the Murder

Summarizing the Texas Rangers' forty-five-page prosecution letter, the State and Brown's counsel explained to the trial court that Brown and the victim, Elijia Alton Chandler, were together in San Antonio before arriving in Castroville the night of Chandler's alleged murder. Specifically, according to the Rangers, Chandler, while driving his truck, shot a man five times at a gas station in San Antonio. Brown was a passenger in Chandler's truck at that time and allegedly helped sabotage the car the man Chandler shot was driving. The man shot in San Antonio was Brown's sister's boyfriend. Brown's sister is also the mother of Chandler's child.

After the shooting at the gas station, Chandler and Brown drove from San Antonio and stopped in Castroville, where they looked for a place to bury the gun. Brown and Chandler then got into an altercation. According to Brown, he told the Rangers he acted in self-defense. The State explained, however, Chandler "had six or seven gunshot wounds to the head from a trajectory that showed to the side and from the back of his head." Brown left Chandler at the scene and took the gun and Chandler's truck and drove back to San Antonio, disposing the gun along the way. Despite

Brown's voluntary statement to the Rangers after being linked to Chandler and the shooting in San Antonio, the State argued Brown's explanation was inconsistent with the evidence found at the scene.

### C. Trial Court's Ruling

At the conclusion of the hearing, the trial court expressed its concerns when considering whether to reduce Brown's bail. Those concerns included Brown not having (1) any community ties; (2) a job, regardless that Mr. Dorsey stated he could work at his "beer garden" because, according to the trial court, Brown should not be working in a bar environment; (3) a driver's license; and (4) a real assurance to attend proceedings despite the Dorseys' promise to bring him because while the Dorseys made several promises, Brown is an adult and does not have to accept the Dorseys' assistance. Also, important to the trial court was that at the time of the alleged murder, Brown was released on bond for the unauthorized use of a motor vehicle, another felony offense alleged to have been committed in Bexar County. This fact indicated to the trial court Brown's inability to follow the rules of a court. Last, the trial court commented on the violent nature of the crime at hand, coupled with Brown's youth, and his apparent association with others involved in violent activity, causing the trial court to be concerned for the community's safety. Based on the trial court's expressed concerns, it denied Brown's request to reduce his bail. However, the court expressed its openness to hear additional evidence that could potentially alleviate those concerns in the future.

### DENIAL OF BAIL REDUCTION

#### A. Standard of Review and Applicable Law

We review a trial court's pretrial bail determination for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Gonzalez*, 383 S.W.3d 160, 161 (Tex. App.—San Antonio 2012, pet. ref'd). A trial court abuses its discretion when it acts

without reference to any guiding rules or principles, *i.e.*, in an arbitrary and unreasonable manner. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (citation omitted). Merely because we might decide a matter differently than how the trial court rules, does not demonstrate the trial court abused its discretion. *Id*. We afford "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

The purpose of pretrial bail is to secure the defendant's appearance at trial to answer the accusation against him. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980); *see also Ex parte Ramirez-Hernandez*, 642 S.W.3d 907, 916 (Tex. App.—San Antonio 2022, no pet.). Although bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, the power to require bail is not to be used so as to make it an instrument of oppression, and excessive bail is prohibited by our state and federal constitutions, as well as the Texas Code of Criminal Procedure. *See Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. [Panel Op.] 1980); *see also* U.S. CONST. amend. VIII; TEX. CONST. art. I, §§ 11, 13; TEX. CODE CRIM. PROC. ANN. arts. 1.09, 17.15. Bail determinations are "bounded and guided by our state and federal constitutions and state law." *Ex parte Estrada*, 398 S.W.3d 723, 724 (Tex. App.—San Antonio 2008, no pet). The defendant bears the burden to demonstrate the bail set by the trial court is excessive. *Rubac*, 611 S.W.2d at 849; *Gonzalez*, 383 S.W.3d at 161.

Article 17.15 of the Texas Code of Criminal Procedure implements the constitutional right to bail. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15. The amount of bail is within the discretion of the court, judge, or magistrate setting it, but must be set in accordance with the Texas Constitution and the following statutory factors:

(1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with,

(2) The power to require bail is not to be so used as to make bail an instrument of oppression,

(3) The nature of the offense and the circumstances of its commission are to be considered, including whether the offense involved violence,

(4) The ability to make bail is to be regarded, and proof may be taken on this point,

(5) The future safety of a victim of the alleged offense and the community shall be considered,

(6) The criminal history of the defendant, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail; and

(7) The citizenship status of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 17.15(a).

Other relevant factors include: (1) the nature of the offense and possible sentence; (2) the defendant's family and community ties, (3) length of residency; (4) employment history; (5) prior criminal record; (6) other outstanding bonds and the defendant's compliance with previous bond conditions; and (7) aggravating factors involved in the alleged offense. *Rubac*, 611 S.W.2d at 849-50.

### B. Analysis

Brown argues his bail is oppressive because the bail set by the trial court effectively denies him bail. While acknowledging the seriousness of his charged offense and the possible punishment range, Brown contends his bail is incommensurate with the facts of his case, namely his claim of self-defense, and the evidence presented at the habeas hearing.

We analyze the article 17.15 and the *Rubac* factors and weigh them as a whole to arrive at an appropriate and reasonable bail that will serve to assure the defendant's presence in court. *Ex*

*parte Nimnicht*, 467 S.W.3d 64, 67 (Tex. App.—San Antonio 2015, no pet.). Appropriate bail is a fact-driven determination, and each case must be judged on its own unique facts. *Id*.

    *1.  Nature and Circumstances of the Charged Offenses; Aggravating Factors*

When determining reasonable bail, the "primary factors" a trial court shall give the most weight to include the nature of the offense and the length of the possible sentence. *See Rubac*, 611 S.W.2d at 849. In setting the amount of bail, it is appropriate to consider whether the offense alleged to have been committed involves violence. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(a)(3)(A); *Perez v. State*, 897 S.W.2d 893, 898 (Tex. App.—San Antonio 1995, no pet.). If the offense is serious and involves a lengthy potential prison sentence, a defendant may have a strong incentive to flee the jurisdiction; thus, bail must be set in an amount sufficiently high to secure the defendant's presence at trial. *Ex parte Castillo-Lorente*, 420 S.W.3d 884, 888 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because a defendant is entitled to the presumption of innocence on all charges, the trial court must, when setting the amount of bail, strike a balance between this presumption and the State's interest in ensuring the defendant will appear for trial. *Ex parte Melartin*, 464 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Brown was charged with murdering Chandler by shooting him. Additionally, according to the Texas Rangers' prosecution letter, Brown shot Chandler six to seven times in the side and back of his head, then took Chandler's truck and drove back to San Antonio, leaving Chandler's body where Brown shot him.

Murder is obviously a violent crime as it results in the death of an individual. Its commission is a first-degree felony for which the punishment range is life imprisonment or any term not more than ninety-nine years or less than five years. *See* TEX. PENAL CODE ANN. §§ 12.32(a), 19.02(b), (c); *see also Ex parte Chavfull*, 945 S.W.2d 183, 186–87 (Tex. App.—San Antonio 1997, no pet.) (holding a $750,000 bail not excessive for a defendant charged with

murdering individual with a firearm in the commission of a robbery); *Ex parte Bartolo*, No. 01-22-00544-CR, 2022 WL 17254957, at *4 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (affirming a $500,000 bond for the "serious and violent" offense of murder). Therefore, given the seriousness of the charged offense and the lengthy potential sentence, this factor weighs against a determination that the bail amount set by the trial court is excessive.

### 2. *Prior Criminal History and Bonds*

A defendant's criminal history must be evaluated to determine whether he presents a danger to the community. *Nimnicht*, 467 S.W.3d at 69. "A court should also evaluate a defendant's criminal history to discern whether such would create an inference of flight risk." *Id*. Brown is currently on bond for another felony allegedly committed in Bexar County. While there was no testimony Brown has ever been convicted of a previous crime, in addition to the charge from Bexar County, for which he is out on bond, Brown was seventeen years old at the time of Chandler's alleged murder. Moreover, Brown and Chandler were also alleged to have been involved in another shooting in San Antonio soon before Chandler's death. We conclude these factors weigh against a determination that the bail is excessive.

### 3. *Future Safety of Victim and Community*

When considering the further safety of the community in setting a defendant's bail, the seriousness of the charged offense should be taken into consideration. *See Milner v. State*, 263 S.W.3d 146, 151 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (explaining "the gravity and nature of the charges" against a defendant can indicate he presents a risk to the safety of the community). Moreover, "the trial court can consider that the defendant's commission of crimes while released on bail warrants a bail sufficient to ensure the safety of the community[.]" *Ex parte Brossett*, 524 S.W.3d 273, 276 (Tex. App.—Waco 2016, pet. ref'd).

Given the seriousness of the first-degree felony offense of murder for which Brown is charged and that Brown is accused of committing the murder while released on bail for another felony offense, the trial court could have reasonably found that Brown posed a danger to the community. Therefore, the potential danger Brown poses to the community weighs against a determination that the bail amount is excessive.

### 4. *Community Ties, Residency, and Employment Record*

"A defendant's ties to the community in which he lives can be an assurance he will appear in court for trial." *Nimnicht*, 467 S.W.3d at 68. A court's review of this factor includes an assessment of the defendant's length of residency, family ties to the community, and work history. *See Rubac*, 611 S.W.2d at 849.

As noted above, Brown provided no evidence of community ties to Medina County, rather he grew up in Bexar County, a neighboring county. Other than the Dorseys testifying they would provide Brown somewhere to live, Brown presented no evidence of a current residence. Moreover, Brown also presented no evidence of employment. Instead, the job Mr. Dorsey offered to provide Brown involved a bar-like establishment, and the trial court cautioned this type of job would likely not benefit Brown. Given Brown's young age and considering these factors, they weigh against a determination that the bail is excessive.

### 5. *Amount Sufficiently High to Assure Appearance But Not Oppress*

Bail needs to be set sufficiently high to provide reasonable assurance the defendant will appear for trial. *See Ex parte Dupuy*, 498 S.W.3d 220, 232 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Yet, when bail is set so high that a person cannot realistically pay for it, the trial court essentially "displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Id*. at 233 (internal quotations omitted). Bail may not be used as an instrument of oppression. *See Ex parte Guerra*, 383 S.W.3d 229, 233–34 (Tex. App.—San Antonio 2012, no

pet.); *see also* TEX. CODE CRIM. PROC. ANN. art. 17.15(a)(2). Bail set in a particular amount becomes oppressive when it assumes the defendant cannot afford bail in that amount, and when it is set for the express purpose of forcing the defendant to remain incarcerated. *See Nimnicht*, 467 S.W.3d at 70; *Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (explaining that when bail amount set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression"). Here, no evidence exists that the trial court set Brown's bail amount at $500,000 for the felony offense of murder to keep him incarcerated. *See Dupuy*, 498 S.W.3d at 233; *Nimnicht*, 467 S.W.3d at 70; *cf. Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (Trial court stated, "I'd rather see him in jail than to see someone's life taken[.]").

Moreover, we note that the bail amount set here is akin to other cases involving a defendant charged with a first-degree felony offense. *See Dupuy*, 498 S.W.3d at 233 (reviewing the amount of bail set in other cases may be instructive); *see, e.g., Ex parte Tata*, 358 S.W.3d 392, 399 n.6 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) ("[T]his Court has previously approved bail amounts ranging from $100,000 to $600,000 for first[-]degree felony offenses[.]"); *Milner*, 263 S.W.3d at 148 ("In other murder cases, $500,000 for bail has been held not to be excessive."); *Ex parte Stocker*, Nos. 14-20-00467-CR to 14-20-00469-CR, 2020 WL 7711348, at *3 (Tex. App.—Houston [14th Dist.] Dec. 29, 2020, pet. ref'd) (mem. op., not designated for publication) ("Recent opinions from our sister [appellate] courts support a finding that $500,000 is reasonable bail in a . . . murder case[.]"); *Ex parte Phillips*, No. 05-10-00616-CR, 2010 WL 3548739, *4 (Tex. App.—Dallas Sept. 14, 2010, no pet.) (not designated for publication) (determining $500,000 bail was not excessive for first-degree murder charge).

The record lacks evidence indicating the trial court used bail as an instrument of oppression, and therefore, this factor weighs against a determination that the bail amount set by

the trial court in Brown's case is excessive. *See Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("[T]he habeas corpus record . . . does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent [the defendant] from posting bail.").

### 6. *Ability to Make Bail*

"The ability to make bail is to be regarded, and proof may be taken on this point." TEX. CODE CRIM. PROC. ANN. art. 17.15(a)(4). "The inability of the [defendant] to pay the amount of bail assessed does not render any amount of bail excessive." *Nimnicht*, 467 S.W.3d at 68. In determining bail, indigence is a circumstance to be considered but is not controlling. *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977) ("Appellant's indigency is a circumstance to be considered, but it is not a controlling circumstance nor the sole criterion in determining the amount of bail."). "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the [defendant] would be in the unique posture of determining what his bond should be." *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd).

A defendant should ordinarily offer evidence of his available resources and his unsuccessful attempts to post bail in the current amount. *See Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975). "To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted." *Ex parte Castellanos*, 420 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "Unless he has shown that his funds and those of his family have been exhausted, a defendant must usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive." *Milner*, 263 S.W.3d at 149. "If both the defendant and his family indicate a financial inability to procure a surety bond, the court will not require him to do a useless thing." *Id*. at 149–50 (internal quotations

omitted). Brown's inability to pay the amount of bail assessed does not render the amount of bail excessive. *See Nimnicht*, 467 S.W.3d at 68.

At the time of the hearing, Brown did not provide any evidence of his ability to pay anything towards his bail. However, Brown was seventeen years old when the alleged offense was committed, turning eighteen in custody. Mr. and Mrs. Dorsey explained Brown's other family members could not help at all, and while the Dorseys had assets, they could not exhaust them to the degree sufficient to pay Brown's present bail. We conclude Brown did not provide evidence of his personal finances, but evidence was provided by the Dorseys that Brown's family had no resources to contribute towards his bail. And while the Dorseys offered to contribute to paying Brown's bail, they could not exhaust their resources.

## C.  Conclusion

Brown had the burden to show that the bail amount set by the trial court was excessive. *See Rubac*, 611 S.W.2d at 849; *Gonzalez*, 383 S.W.3d at 161. Given the balance of all the relevant factors discussed above, we conclude Brown failed to show the trial court abused its discretion in setting Brown's bail at $500,000 for the first-degree felony offense of murder and denying Brown's request to reduce his bail. *See Rubac*, 611 S.W.2d at 849–50; *Gonzalez*, 383 S.W.3d at 161. We overrule Brown's first issue.

### VIOLATION OF RIGHT AGAINST SELF-INCRIMINATION

In his second issue, Brown argues the trial court violated his Fifth Amendment right against self-incrimination by "stating that it needed to hear from [Brown] directly before it would grant a bond reduction." *See* U.S. CONST. amend. V. Specifically, Brown claims that while the trial court explained its reasoning for denying his bail reduction request but willingness to hear additional evidence in any subsequent requests, the trial court insinuated Brown would have to testify before it would reduce his bail.

To the contrary, during the trial court's explanation of its ruling, it clarified more than once that it was not "saying [Brown] has to testify," or that the trial court was "going to encourage him to get up here and testify even for the limited purposes" of requesting a bond reduction We conclude the trial court did not violate Brown's Fifth Amendment right against self-incrimination. Brown's second issue is overruled.

## CONCLUSION

Having overruled both of Brown's issues, we affirm the trial court's order denying Brown's pretrial application for writ of habeas corpus.

Irene Rios, Justice

DO NOT PUBLISH