

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00364-CR

**EX PARTE** Bobby **BORDELON**

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 15-2215-CR-C
Honorable William J. Old, III, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: May 19, 2021

AFFIRMED

Bobby Bordelon appeals the trial court's order denying his pretrial habeas corpus application seeking a reduction in the amount of his bail. We affirm the trial court's order.

### BACKGROUND

Bordelon is awaiting trial on five felony offenses: one count of continuous sexual abuse of a child; one count of aggravated sexual assault of a different child; and three counts of aggravated assault with a deadly weapon. The combined amount of his bond is $1,000,000.

Bordelon was first indicted for continuous sexual abuse of a child, D.B., on March 6, 2014. The trial ended in a mistrial when a second child victim, M.R., made an outcry of sexual assault against Bordelon during trial. On November 15, 2015, Bordelon was re-indicted for continuous sexual abuse of D.B. and additionally indicted for aggravated sexual assault of M.R. and three

counts of aggravated assault with a deadly weapon. Bordelon filed a pretrial habeas corpus application seeking dismissal of the continuous sexual abuse of a child count based on double jeopardy. The trial court denied relief and we affirmed. *See Bordelon v. State*, 582 S.W.3d 436, 439-42 (Tex. App.—San Antonio 2018, pet. ref'd), *cert. denied*, 140 S.Ct. 188 (2019).

On April 10, 2020, Bordelon filed the instant application for writ of habeas corpus asserting his cumulative $1,000,000 bail is excessive and seeking a reduction. The habeas petition is unsworn. At the evidentiary hearing, the court admitted seven affidavits submitted by Bordelon: (1) an affidavit by his attorney Phil Ross; (2) an affidavit by Terry Brown, a friend/former co-worker and potential employer; (3) an affidavit by Earl Suggs, a friend/former co-worker; (4) an affidavit by Dusty Marino, a friend/former co-worker; (5) an affidavit by Stuart Brown, a friend/former co-worker; (6) an affidavit by Howard Forbes, a pastor and friend; and (7) an affidavit by Karrie Forbes, a pastor and friend. Bordelon himself did not submit an affidavit. The State proffered five exhibits which were admitted without objection: (1) the probable cause affidavit and complaint signed on January 15, 2014 in support of the charge that Bordelon committed aggravated sexual assault of his eight-year-old child, D.B.; (2) a photograph of a gun; (3) the SANE exam report of D.B.; and (4) the investigator's report. Neither Bordelon nor the State presented any live witnesses. Bordelon's counsel argued that his evidence established he was not a flight risk because he had ties to the community through family and friends, a job waiting for him, and no financial resources. Bordelon argued that his bond should be reduced to $50,000, a reasonable amount his friends could help him post, because even though the charges are serious there are no extraordinary circumstances warranting the current high bond. The State responded that the charge of continuous sexual abuse of a child is an extraordinary type of felony involving repeated commission of sexual assault which carries a mandatory minimum sentence of 25 years and maximum of life if convicted. The State further argued that this case does present exceptional

circumstances warranting the high bond because, of the five alleged offenses committed by Bordelon, there are multiple victims: the sexual assault charges involve two different child victims, D.B. and M.R.; the aggravated assault/deadly weapon charge involves threatening D.B., as well as Bordelon's wife and another relative. Based on the nature of the offenses and the need to ensure the safety of the victim and community, the State argued the bond should not be reduced.

On May 8, 2020, the trial court signed a general order denying Bordelon's request to reduce the amount of his bail.[1] Bordelon appeals.

## DISCUSSION

On appeal, Bordelon asserts the trial court erred in denying habeas relief because he carried his burden to show the amount of bail is excessive. Bordelon requests the amount of bail be reduced to $50,000, which is a bond he can raise with the help of friends and family, or to another reasonable amount less than $250,000.

### Standard of Review

An appellate court reviews a trial court's pre-trial bail determination for an abuse of discretion. *Ex parte Gonzalez*, 383 S.W.3d 160, 161 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981)). A trial court abuses its discretion by acting arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id.* We will reverse the trial court's order only if it is outside the zone of reasonable disagreement, not merely because we might have decided the matter differently. *Id.* In determining whether the trial court abused its discretion, we measure the court's ruling against the

---

[1] Bordelon notes in his brief that the order mistakenly states that Bordelon's "motion to reduce bond" is denied. The record confirms that Bordelon filed a pretrial habeas application, not a motion to reduce bond, and that the trial court considered and ruled on the request for a bond reduction as a habeas corpus application; the mistake in the written order constitutes a clerical error, not a "defect of substance" that would defeat Bordelon's right to appeal. *See Sanchez v. State*, 340 S.W.3d 848, 852 (Tex. App.—San Antonio 2011, no pet.) (no right to appeal from interlocutory order denying motion to reduce bond).

relevant criteria under which the ruling was made. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

In his second and third issues, Bordelon urges this court to review "the legal and factual sufficiency" of the habeas evidence *de novo* "because all of the evidence admitted at the hearing was documentary without testimony." We will apply the well-established abuse of discretion standard of review to determine whether the trial court's ruling is supported by the record.

### *Applicable Law: Excessive Bail*

Excessive bail is prohibited by our federal and state constitutions, as well as the Texas Code of Criminal Procedure. U.S. CONST. amends. VIII, XIV; TEX. CONST. art. I, §§ 11, 13; TEX. CODE CRIM. PROC. ANN. art. 17.15. Bail should not be used as an instrument of oppression; the primary purpose of bail is to secure the defendant's appearance at trial. *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Gonzalez*, 383 S.W.3d at 161 (citing *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980)). A defendant bears the burden to demonstrate that the amount of bail is excessive. *Id.*; *Ex parte Rubac*, 611 S.W.2d at 849.

The Texas legislature has provided a guideline for courts to follow in setting pretrial bail:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15.

The Court of Criminal Appeals has added seven additional factors for courts to consider in determining what constitutes reasonable bail under the circumstances: (1) the nature of the charged offense and length of the potential sentence; (2) the defendant's ties to the community, including family ties; (3) the defendant's length of residency; (4) the defendant's employment history; (5) the defendant's criminal history; (6) the existence of previous bonds against the defendant and his compliance with conditions of those bonds; and (7) any aggravating circumstances involved in the charged offense. *Ex parte Rubac*, 622 S.W.3d at 849-50; *Gonzalez*, 383 S.W.3d at 162. On appeal, Bordelon bears the burden to demonstrate his bail is excessive in light of these considerations. *Ex parte Nimnicht*, 467 S.W.3d 64, 66 (Tex. App.—San Antonio 2015, no pet.).

*Analysis*

In determining whether Bordelon met his burden to prove the bail is excessive, a court analyzes the factors individually and weighs them as a whole in considering whether the bail is reasonable under the circumstances. *Id*. at 67. "Appropriate bail is a fact-driven determination and each case must be judged on its own unique facts." *Id.*; *Esquivel v. State*, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.).

*Nature and Circumstances of the Charged Offenses*

The primary factors to be considered in assessing the reasonableness of bail are the nature of the offenses and the punishments that may be imposed. *Rubac*, 611 S.W.2d at 849. When the offense is serious and involves aggravating factors that may result in a lengthy prison sentence, bail must be set sufficiently high to secure the defendant's presence at trial. *Ex parte Castillo-Lorente*, 420 S.W.3d 884, 888 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A defendant is entitled to the presumption of innocence on all charges. *Ex parte Melartin*, 464 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2015, no pet.). When setting the amount of bail, the trial court

must strike a balance between this presumption and the State's interest in ensuring the defendant will appear for trial. *Id.*

Bordelon is charged with five felony offenses: continuous sexual abuse of a child, aggravated sexual assault of another child, and three counts of aggravated assault with a deadly weapon. Count One of the indictment alleges that, during a period of 30 days or more from on or about October 15, 2011 through September 21, 2013, Bordelon committed at least two or more acts of sexual abuse against a child younger than 14 years of age, namely: (1) indecency with a child by touching the genitals of D.B.; (2) indecency with a child by causing D.B. to touch Bordelon's genitals; (3) aggravated sexual assault of a child by digital penetration of D.B.'s sexual organ; and (4) aggravated sexual assault of a child by causing D.B.'s sexual organ to contact Bordelon's sexual organ and/or penetration of D.B.'s sexual organ by Bordelon's sexual organ. The offense of continuous sexual abuse of a child is a first-degree felony for which the legislature increased the minimum punishment to 25 years' imprisonment with a maximum punishment of life, plus a maximum $10,000 fine. TEX. PENAL CODE ANN. § 21.02(b), (h); *id.* § 12.32. Count Two of the indictment alleges that, on or about October 15, 2012, Bordelon committed the first-degree felony offense of aggravated sexual assault of a child by digitally penetrating the sexual organ of M.R. *Id.* § 22.021(a)(1)(B). Count Two carries a punishment range of five years' imprisonment to life, plus a maximum $10,000 fine. *Id.* § 12.32. Finally, Counts Three through Five allege that, on or about September 21, 2013, Bordelon committed aggravated assault by threatening Carl Riley, Priscilla Bordelon, and D.B. (respectively) with imminent bodily injury by pointing a shotgun, a deadly weapon, at them. *Id.* § 22.02(a)(2). The alleged aggravated assault is a second-degree felony, which has a punishment range of two to 20 years' imprisonment, plus a maximum fine of $10,000. *Id.* § 12.33. Thus, Bordelon faces a substantial potential sentence of 25 years to life imprisonment.

The habeas corpus record[2] contains the probable cause affidavit/complaint signed by Detective Virgil Jones of the Schertz Police Department on January 15, 2014 in support of an aggravated sexual assault of a child charge against Bordelon (State Exhibit #1). The affidavit states that: on September 21, 2013, the police were dispatched for a disturbance between a husband and wife; Priscilla Bordelon, the wife, told officers that "she was in a verbal altercation with her husband, Bobby Bordelon, when Bobby admitted to her that he had been touching [D.B.], their 8 year old daughter's, private areas;" "[D.B.] confirmed this after being questioned by Priscilla;" "then Bobby left the house with a shotgun, saying that he wanted to end his life;" and Bobby Bordelon was detained by police that night. The affidavit further states that during a September 23, 2013 forensic interview with D.B. she "made an outcry of her genitals being touched by Bobby Bordelon" and during an October 7, 2013 SANE[3] exam D.B. "made further allegations of penetration of her sexual organ by Bobby Bordelon."

State's Exhibit #3 is a copy of the notes from the SANE examination reciting that D.B. told the nurse that: when she was seven years old, her father, Bordelon, "got his fingers, and started touching my private part" under her clothes while she was in her bed; "[h]is three middle fingers went in my private . . . [h]is fingers went inside … this far (gesturing). It hurt;" [h]e also put his private into my private" (pointing to a diagram of a vagina); her father put his finger inside her private about four times (describing the location and surrounding circumstances of each of the four times); and Bordelon told her not to tell her mother. The SANE notes also state that Priscilla Bordelon told the nurse that Bordelon has an STD from before their marriage. With respect to the shotgun incident, D.B. stated that her parents were fighting and Bordelon told her mother "the secret" and then "ran yelling" and "wanted to kill himself." "My dad had a whole bucket of bullets.

---

[2] None of the affidavits submitted by Bordelon pertain to the nature and circumstances of the charged offenses.
[3] SANE is an acronym for Sexual Assault Nurse Examiner.

He pointed the gun at my uncle Karl. My dad ran through the house with the gun. He threw the gun in the truck and went speeding off." State Exhibit #2 is a photograph of the shotgun.

Regarding the outcry by the second child, M.R., Chief Investigator Frank Allenger's report (State Exhibit #4) states that on the morning of November 5, 2015 he was informed that M.R. made an outcry statement to Bordelon's counsel "pertaining to Bordelon sexually assaulting her" while she was being prepped to testify for the defense and a mistrial had been declared. Investigator Allenger conducted a video recorded interview with Bordelon's attorney during which she stated she took M.R. into a small conference room while her mother waited outside to prepare M.R. to testify in Bordelon's defense; when counsel asked M.R. whether everything she said during her Child Advocacy Center interview was true, M.R. shook her head "No;" M.R. began crying and stated that Bordelon "put his finger inside her;" at that point she would no longer talk about it with the attorney. Later that morning, a forensic interview of M.R. was conducted at the Child Advocacy Center. M.R. stated during the interview that she was in fifth grade; when she was six or seven years old, she spent the night with D.B. and when they woke up they went to D.B.'s parents' bedroom; "that was when [B]obby did something to her;" "Bobby put his finger inside of her vagina;" D.B. saw what happened to M.R. and "it happen[ed] to [D.B.] too; "[B]obby did the same thing to [D.B.];" M.R. did not tell her mother or father because "they would have gotten made [sic] at her;" it only happened to M.R. one time; the week before Bordelon's trial, she talked to D.B. "about what Bobby had done to them" and "[D.B.] made her feel better and that Bobby [had] done more things to D.B. than he had done to [M.R.]." Finally, Allenger's report recites, "[o]n January 14, 2016, I was advised that an additional victim by the name of [a different child with the initials M.R.] out cried to another child." He states information arose during a Child Advocacy Center meeting and he planned to follow up on the information.

In his brief, Bordelon attempts to minimize the seriousness of the allegations by asserting that all of his alleged criminal conduct occurred prior to September 2013. This argument disregards the fact that Bordelon was arrested on these charges in September 2013 and has remained incarcerated. As the State points out, Bordelon was initially charged with a single incident of aggravated sexual assault of a child against D.B., but the seriousness of the offense was heightened after D.B. revealed other sexual assault incidents, leading to the charge of continuous sexual abuse of a child and a higher minimum sentence if convicted. Then during that trial, a second child sexual assault victim [M.R.] alleging the same type of sexual abuse came forward, resulting in a mistrial and a new indictment alleging multiple felonies. With respect to the aggravated assault/deadly weapon charges, Bordelon argues that none of the three complainants were actually injured by his conduct in pointing a shotgun at them. The commission of an assault or aggravated assault does not require that the victim sustain bodily injury; intentionally or knowingly threatening to cause imminent bodily injury is sufficient. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). Moreover, one of the victims Bordelon threatened with the shotgun is D.B., the complainant on the most serious charge he faces, i.e., continuous sexual abuse of a child. Given the seriousness of the charged offenses, the aggravating circumstances present in Count One, and the lengthy potential sentences, the trial court could have reasonably concluded there was a possibility Bordelon would not appear for trial. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(3); *see also Ex parte Rubac*, 611 S.W.2d at 849-50 (factor #7). Therefore, this factor weighs in favor of a high bail amount. *See Ex parte Nimnicht*, 467 S.W.3d at 67-68; *see also Ex parte Dupuy*, 498 S.W.3d 220, 231 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

*Prior Criminal History and Bonds*

No evidence was presented showing that Bordelon has any prior criminal history or any previous or other outstanding bonds. This factor weighs against a high bond. *See Ex parte Rubac*, 611 S.W.2d at 849-50 (factors #4-#6).

*Future Safety of Victims and Community*

As noted above, Bordelon is charged with repeatedly sexually assaulting his daughter D.B. over a period of time between October 2011 and September 2013. Bordelon is further charged with committing the same sexually assaultive behavior against another seven-year-old child, M.R., and there was an allegation that there might be a third child victim according to Investigator Allenger's report. Thus, there are at least two child victims of the same type of criminal conduct. Bordelon is also charged with threatening to inflict imminent bodily injury on one of his child victims, his daughter D.B., as well as on his wife and a relative, Uncle Carl, by pointing a shotgun at them. Bordelon claims in his brief that he only "waved the gun around" and his true intent was to harm himself. The trial court could have reasonably inferred from the habeas record that Bordelon intended to threaten D.B. and her mother and uncle with violence when he pointed the gun in their direction. Terry Brown's affidavit (Defense Exhibit #6) states he owns a plumbing company in Comal County and will employ Bordelon as a master plumber if he is released on bond. As the State points out, Bordelon's job as a plumber would require him to be out in the community and potentially inside the residences of customers, giving him potential access to children. On this record, the trial court could reasonably conclude that Bordelon poses a danger to the child victims, as well as to his wife and members of the community at large. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(5).

*Community Ties, Residency, and Employment Record*

As noted, Bordelon did not submit his own affidavit, instead relying on six affidavits by friends and former co-workers to show his community ties, residency, and employment record. Each affidavit is the same pre-typed form with a few "fill in the blank" lines. Each affidavit states how many years the person has known Bordelon and recites that he is "honest and trustworthy," "diligent and hard working," and his release on bond would be in his best interest. Terry Brown (a Comal County resident), Earl Suggs (a Bexar County resident), Dustin Marino (a Comal County resident), and Stuart Brown (a Bexar County resident) state they have each known Bordelon between 10 to 15 years and worked with him at A-Best Plumbing for two to four years. The affidavits do not state in which county A-Best Plumbing is located. Terry Brown's affidavit states he is currently the owner of B-n-T Plumbing in Comal County, Texas and is willing and able to employ Bordelon as a master plumber if he is released on bond. The affidavits of Pastor Howard Forbes and Pastor Kerrie Forbes state they have each known Bordelon for more than 16 years and fellowshipped with him at Christian Family Church for more than three years. The affidavits do not state where Christian Family Church is located. None of the six affidavits provide a timeframe for the years they have known or worked with Bordelon. Only Terry Brown's affidavit provides any additional statement about Bordelon's community ties, generally reciting that Bordelon "has ties to the community that he respects." None of the affidavits state where Bordelon resided or how long he lived there. The only information in the record about Bordelon's residency is the probable cause affidavit/complaint filed in Guadalupe County which states that police responded to 3016 Bent Tree Dr. for a "husband and wife disturbance" on September 21, 2013.

Bordelon asserts he established that he has strong community ties and a lengthy work history in Guadalupe County where he is charged. *See Ex parte Nimnicht*, 467 S.W.3d at 68 (noting a defendant's community ties, which include residence history, work history, and family

ties, can be viewed as assurance he will appear in court). However, the record contains scant details to support the affidavits' conclusory statements on these factors. There is no specific information showing how long Bordelon resided in Guadalupe County and whether he owned or rented a home there, or how long he worked at A-Best Plumbing, during what timeframe, and where it was located. Further, Bordelon provided no specific information about family members who currently reside in Guadalupe County or any other ties he has to the community.

*Amount Sufficiently High to Assure Appearance But Not Oppress; Ability to Pay*

Bail needs to be set sufficiently high to provide reasonable assurance the accused will appear for trial, but should not be used as an instrument of oppression. TEX. CODE CRIM. PROC. ANN. art. 17.15(1), (2), (4); *Ex parte Dupuy*, 498 S.W.3d at 232. "This reasonable assurance standard creates and limits the risks of both sides. Any grant of bail risks the defendant's flight, but bail limits that risk by reducing the money available to fund the flight, while simultaneously creating a fund to finance an effort to re-arrest the defendant." *Id.* at 232-33. "When bail is set so high that a person cannot realistically pay it, the trial court essentially displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Id.*

Bordelon argues his bail is oppressive because "the record indicates that the trial court set the current bail amounts for the sole purpose of ensuring that [he] remains incarcerated pending trial." Courts have held bail to be oppressive when the record indicates the trial court set the bail amount "for the express purpose of forcing appellant to remain incarcerated pending trial or appeal." *See, e.g., Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.). Our independent review of the habeas corpus record did not, however, reveal any comment or suggestion by the trial court indicating the bond amount was set for the express purpose of forcing Bordelon to remain in jail pending trial. *See Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.— Houston [1st Dist.] 2010, no pet.) (appellate court's independent review of the habeas corpus

record "did not suggest that the trial court deliberately set bail at an excessively high level solely to prevent Montalvo from posting bail"). Here, the amount of bail, while high at $1,000,000, is a cumulative bail for five alleged felonies carrying a minimum 25-year sentence and a maximum life sentence upon conviction. There is nothing in the record to indicate the trial court chose the amount of bail in an attempt to keep Bordelon incarcerated pending trial. *C.f., e.g., Ex parte Harris*, 733 S.W.2d at 714 (trial judge stated on the record, "I'd rather see him in jail than to see someone's life taken.").

Bordelon asserts he proved that he has made attempts to post, but cannot afford, the current bond. In his unsworn habeas application, he states he "has attempted, both individually, and through family and friends, to post bond in said amount but has been unsuccessful" in raising the necessary funds and he "has only minimal financial resources." Ross's affidavit states that: he "personally investigated Bobby's financial circumstances and confirmed that he is indigent;" his online search of the public records for Guadalupe, Comal, and Bexar Counties showed that Bordelon "does not own any real property;" and his investigation showed that Bordelon "does not own any personal property or have any financial accounts." Ross states it is impossible for Bordelon to post the current bond but he could post a $50,000 bond by borrowing from his friends. Terry Brown states in his affidavit that he could afford to loan Bordelon $5,000 for the cash payment required to post a $50,000 bond. The affidavits from Bordelon's other friends state they could collectively loan Bordelon an additional $600.

Other than Ross's affidavit, Bordelon did not provide any specific information regarding his finances and assets, or those of his family, with respect to his ability or inability to post the current bond. A defendant should ordinarily offer evidence of his available resources and his unsuccessful attempts to post bail in the current amount. *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975). "To show that he is unable to make bail, a defendant generally must show

that his funds and his family's funds have been exhausted." *Ex parte Castellanos*, 420 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The only evidence in the record that is relevant to this factor of Bordelon's ability to make bail is Ross's affidavit stating he searched the public records and talked to Bordelon's friends and determined he owns no personal or real property and has no financial accounts. Bordelon suggests on appeal that it was not necessary for him to present any proof that he cannot post the $1,000,000 bond because he is not required to prove "a useless thing." Bordelon misinterprets the caselaw as excusing any need for proof of his financial ability or inability to make the bond amount. The cases hold that when there is other evidence in the record showing the depleted finances of the defendant and his family, the courts will not require the defendant to "do a useless thing" by showing he made unsuccessful attempts to post bail in the challenged amount. *See Ex parte Dueitt*, 529 S.W.2d at 532; *see also Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Ex parte Bogia*, 56 S.W.3d 835, 836 (Tex. App.—Houston [1st Dist.] 2001, no pet.). "Unless he has shown that his funds and those of his family have been exhausted, a defendant must usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive." *Milner*, 263 S.W.3d at 149. "If both the defendant and his family indicate a financial inability to procure a surety bond, the court will not require him 'to do a useless thing.'" *Id.* at 149-50 (citing *Dueitt*, 529 S.W.2d at 532-33). Here, the record contains scant evidence of the financial abilities or inabilities of Bordelon and his family, or any unsuccessful attempts to post the current bail.

With respect to whether Bordelon is a flight risk, Ross's affidavit states that he has known Bordelon for two months and "based on my preliminary background investigation" Ross believes Bordelon "is not a flight risk" and "will comply with all terms and conditions of pre-trial release." The other six affidavits by Bordelon's friends state that he "is not a flight risk" and "will comply with all terms and conditions of pre-trial release" in a similar conclusory manner. Significantly,

none of the affidavits by Bordelon's friends state that they are aware of the nature of the criminal charges against Bordelon or that they understand the punishment range he will face if convicted.[4]

Bordelon stresses that he has remained incarcerated since 2013 pending trial. However, we note that a large part of the trial delay has been due to Bordelon's own defense strategy. After the mistrial was declared in Bordelon's first continuous sexual abuse trial on November 2, 2015, the State promptly obtained the current indictment on November 15, 2015. Bordelon filed a habeas corpus petition challenging the continuous sexual abuse of a child allegation in Count One on the grounds of double jeopardy. After the trial court denied relief, Bordelon pursued an appeal to this court, the Court of Criminal Appeals, and the United States Supreme Court, which denied certiorari on October 7, 2019. There is nothing in the record before us to indicate that Bordelon ever sought a reduction in the amount of his bail during the pendency of those appeals. Bordelon sought a bail reduction for the first time on April 10, 2020 when he filed the subject habeas corpus application.

Finally, Bordelon argues that courts have held lesser bail amounts to be excessive in cases with more serious charges. *See*, *e.g.*, *Ex parte Wood*, 952 S.W.2d 41, 42-43 (Tex. App.—San Antonio 1997, no pet.) (holding a combined $450,000 bond on capital murder and aggravated robbery charges was too high under the bond factors); *Ex parte McDonald*, 852 S.W.2d 730, 733 (Tex. App.—San Antonio 1993, no pet.). However, as noted, bail cases are highly fact-specific and the cases cited by Bordelon are factually distinguishable with respect to the relevant factors and the amount of evidence presented on the factors. Further, many of the cases are "too old to provide useful dollar-to-dollar comparisons due to the changing value of money." *Ex parte Dupuy*, 498 S.W.3d at 233.

---

[4] In his appellant's brief, Bordelon recites that after the September 21, 2013 incident, he "moved to Alpine, Texas, where he worked until he returned to San Antonio some months later." It is not clear from the record whether the trial court had knowledge of Bordelon's short residence in Alpine when it set the bond amount.

We conclude that Bordelon failed to meet his burden to show that under the relevant factors the trial court abused its discretion in setting the cumulative amount of his bond at $1,000,000. Given the scant information concerning Bordelon's community ties and the continuous nature of the sexual abuse and seriousness of the charges, as well as the substantial minimum and maximum sentences he faces if convicted, the trial court could have reasonably determined that Bordelon is a flight risk. With regard to safety, we consider it particularly noteworthy that Bordelon is indicted for threatening one of his child victims with a shotgun after his sexual abuse was revealed. Despite the assertions by Bordelon's attorney and friends that he is not a flight risk and would comply with any conditions of pretrial release, the trial court could have reasonably concluded that the current bond amount was necessary to reasonably assure Bordelon's appearance and to safeguard the safety of the complainants and the community.

## CONCLUSION

Based on the foregoing reasons, we affirm the trial court's order denying Bordelon's habeas application seeking a reduction in the amount of his bond.

Liza A. Rodriguez, Justice

DO NOT PUBLISH